## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

JOSEPH SCHAUFF and PEGGY SCHAUFF

Plaintiffs,

v.

SUSHAMA TRIPATHI and LLOYD GLICK,

Defendants.

Case No: ___1:20-cv-00590___

## JOSEPH SCHAUFF AND PEGGY SHAUFF'S COMPLAINT FOR VIOLATIONS OF THE UNFAIR PRACTICES ACT, BREACH OF FIDUCIARY DUTY, WRONGFUL MISREPRESENTATION, AND OTHER WRONGS

COMES NOW Joseph Schauff and Peggy Schauff (the "*Plaintiffs*") by and through its undersigned counsel, ABELL LAW LTD. CO., (David Abell) and SAUCEDOCHAVEZ, P.C. (Christopher Saucedo), for their Complaint for Violations Of The Unfair Practices Act, Breach Of Fiduciary Duty, Wrongful Misrepresentation, and Other Wrongs against SUSHAMA TRIPATHI and LLOYD GLICK (each a "*Defendant*" and collectively, the "*Defendants*"), states the following.

Plaintiffs Joseph and Peggy Schauff, by and through their undersigned attorneys, complain against defendants Sushama Tripathi and Lloyd Glick. The preceding and succeeding allegations are based upon the information and belief of Plaintiffs.

## PARTIES, JURISDICTION, AND VENUE

### *Plaintiffs Joseph Schauff and Peggy Schauff*

1.      Plaintiffs Joseph Schauff and Peggy Schauff are a married couple, and each are a residents of Greenfield, Indiana.

2.      Plaintiffs were investors in Ostara Technology Company, Inc. and Venturioum

LLC at all times relevant to this Complaint.

### *Ostara*

3.      Ostara Technology Company, Inc. ("*Ostara NM*") is a New Mexico corporation formed on October 5, 2012 with its principal place of business at 4001 Office Ct. #604 Santa Fe, New Mexico 87507.

4.      Ostara Technology Company, Inc. ("*Ostara DE*") and together with Ostara NM, "*Ostara NM*") is a Delaware corporation formed on December 14, 2012 with its principal place of business at 4001 Office Ct. #604 Santa Fe, New Mexico 87507.

### *Venturioum*

5.      Venturioum, LLC ("*Venturioum*") is a Delaware limited liability company formed on October 5, 2010 with its principal place of business at 4001 Office Ct. #604 Santa Fe, New Mexico 87507.

### *Defendant Sushama Tripathi*

6.      Defendant Sushama Tripathi ("*Tripathi*") is a resident of Farmington, Connecticut.

7.      Tripathi was a co-founder, chief operating officer, material shareholder, and twenty-five (25%) shareholder of Ostara NM at all times relevant to this Complaint.

8.      Tripathi was a co-founder, chief operating officer, material shareholder, and twenty-five percent (25%) shareholder of Ostara DE at all times relevant to this Complaint.

9.      Tripathi was the chief operating officer, managing member, material shareholder of Venturioum and held twenty-five percent (25%) of Venutrioum's membership interests at all times relevant to this Complaint.

10.     Tripathi continues to hold herself out to the public as the chief operating officer and co-founder of Venturioum on both the company's website and in her personal LinkedIn page.

11.     Tripathi indicates in her LinkedIn profile that she performs her executive functions with Venturioum in both New Mexico and Connecticut.

12.     Tripathi was an executive officer or principal of one or more of the Venturioum/Ostara Entities.

### Defendant Lloyd Glick

13.     Defendant Lloyd Glick ("*Glick*") is a resident of New Jersey.

14.     Glick was the co-founder, president, chief executive officer, director, and material shareholder of Ostara NM and was a  was a twenty-five percent (25%) shareholder of Ostara NM at all times relevant to this Complaint.

15.     Glick was the co-founder, president, chief executive officer, director, and material shareholder of Ostara DE and was a  was a twenty-five percent (25%) shareholder of Ostara DE at all times relevant to this Complaint.

16.     Glick was a co-founder, chief executive office, managing member, and material shareholder of Venturioum and held twenty-fiver percent (25%) of the membership interests of Venturioum at all times relevant to this Complaint.

17.     Glick held himself out to the public as the chief executive officer and co-founder of Venturioum.

18.     Glick was also an executive officer or principal of one or more of the Venturioum/Ostara Entities.

### Jurisdiction

19.     This Court has subject matter jurisdiction over this case because there is complete diversity between the parties, and the amount in controversy is more than $75,000.

20.     Jurisdiction is also vested in this Court by virtue of 28 U.S.C. § 1331 as a federal

question pursuant to Plaintiffs' Count I (Violation of the Securities Exchange Act of 1934 [15 USC § 78j(b)]).

21.     Venturioum and Ostara's principal place of business is in New Mexico; thus availing the parties to the personal jurisdiction of this Court.

22.     Because claims brought under New Mexico law are so related to Plaintiffs' claims over which the Court has original jurisdiction that they form part of the same case or controversy, the Court has supplemental jurisdiction over Plaintiffs' common law and state law claims pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

### A.     Plaintiffs' Investment in the Venturioum/Ostara Entities

23.     Beginning in 2010, Plaintiffs received various solicitations from Ostara to invest in securities issued by Ostara.

24.     Upon theses solicitations and representations made by Ostara, Plaintiffs made an initial investment of $5,000.00 for shares priced at $0.20 per share on November 8, 2012.

25.     By December 6, 2012 Plaintiffs directly invested $38,917 (the "*Invested Amount*") and received 323,335 shares of common stock in Ostara Technology Company, Inc. (the "*Ostara NM Securities*").

26.     Defendant Ostara NM represented to Plaintiffs that there were 9,040,000 shares of Ostara NM common stock issued and outstanding as of June 2014 and as of April 2016.

27.     Plaintiffs ultimately held a 3.59% ownership interest in Ostara NM.

### B.     The Subscription Agreement

28.     Tripathi and Glick, as the managing members and executive officers of Ostara and Venturioum, issued Plaintiffs a Subscription Agreement Private Placement of the Membership

Interests of Venturioum, LLC.

29.     On August 22, 2014, Plaintiffs executed two versions of a "Subscription Agreement Private Placement of the Membership Interests of Venturioum, LLC" (the "*Subscription Agreements*").

30.     No other offering materials were provided to Plaintiffs such as operating agreements, bylaws, corporate minutes, capitalization tables, financial statements or any other material corporate documents or information relating to Ostara NM, Ostara DE, or Venturioum.

**C.      Issuance of Ostara DE and Venturioum Securities**

31.     Defendants took action in 2016 to convert the securities of Ostara NM into stock of Ostara DE and membership units of Venturioum.

32.     Although this action was represented as a "name change," Ostara DE was converted into a Delaware LLC and membership units were issued in a 1:1 exchange for the Ostara DE securities.

33.     Defendants represented to Plaintiffs that their relative ownership interests would remain the same across the three Venturioum/Ostara Entities.

34.     In April 2016, Plaintiffs were issued 211,250 units of Venturioum and 236,250 shares of common stock in Ostara DE despite previously holding 323,335 shares of Ostara NM common stock (the "*Ostara DE Securities*" and together with the Ostara NM and Venturioum Units, the "*Ostara/Venturioum Securities*").

35.     The Venturioum/Ostara Entities represented to Plaintiffs that they were issued equal ownership interests in Ostara DE and Venturioum in exchange for their 3.59% equity stake in Ostara NM (the "*Ostara/Venturioum Investment*").

36.     Neither the issuance nor the securities issued by Ostara NM, Ostara DE, or

Venturioum were registered in the states of New Mexico, Illinois, Delaware or federally with the United States Securities and Exchange Commission ("*SEC*").

37.     Neither Ostara NM, Ostara DE nor Venturium was registered as a broker dealer or an investment advisor with the New Mexico Securities Division, the Delaware Department of Justice (Office of the Attorney General - Fraud and Consumer Protection Division, Investor Protection Unit) or the SEC.

38.     The transactions that led to the issuance of the Orion/Venturioum Securities were not exempt from registration under applicable state or federal securities laws.

**D.     Commonly Held Securities; No Designation of Special Rights in Securities and No Special Class of Securities**

39.     Tripathi and Glick held common stock in Ostara DE, Ostara NM, and common membership units in Venturioum.  The same securities held by Plaintiffs.

40.     None of the Ostara or Venturioum securities issued to Tripathi or Glick provided them with special liquidation rights beyond those afforded under state securities laws or those afforded to Plaintiffs and the other common stockholders.

41.     None of the Ostara or Venturioum securities issued to Tripathi or Glick provided them with special anti-dilution rights beyond those afforded under state securities laws or those afforded to Plaintiffs and the other common stockholders.

42.     None of the Ostara or Venturioum securities issued to Tripathi or Glick provided them with special redemption rights beyond those afforded under state securities laws or those afforded to Plaintiffs and the other common stockholders.

43.     Neither Glick nor Tripathi held any special rights relative to the other members of Venturioum.

E.     **Orion-Potomac Deal – Brokerage Fee & Creation of Secret Entity  (Venturioum Orion)**

44.     In their capacity as executive officers of Venturioum, Tripathi and Glick assisted in identifying and securing a transaction between Orion Systems Integrators, LLC ("*Orion*") and Potomac Equity Partners, LLC ("*Potomac*") by which Potomac would make a multi-million dollar investment in Orion (the "*Orion-Potomac Deal*")

45.     Venturioum entered into a brokerage agreement with Orion and Potomac by which Venturioum would receive a brokerage fee in connection with the closing of the Orion-Potomac Deal (the "*Brokerage Fee*").

46.     Plaintiffs' investments in and the other capital raised by Venturioum financed the salaries and expenses of Tripathi and the other Venturioum officers in their efforts, in part, to broker the Orion-Potomac Deal and to earn the Brokerage Fee.

F.     *Glick Abandons Shareholders – Insider Transfers of Securities*

47.     In late 2014, and in connection with his negotiation for the Brokerage Fee of the Orion-Potomac Deal, Glick sought to find a way to carve out a portion of the Brokerage Fee for himself despite his fiduciary obligations to the Plaintiffs and the other shareholders.

48.     Based on this insider, non-public information, and only days prior to the payment of the Brokerage Fee, Glick caused Ostara and Venturioum to execute and deliver a Purchase of Interest, Release and a Hold Harmless Agreement dated September 8, 2014, by which Glick transferred his 25% equity interest of Ostara and Venturioum to Tripathi and David Silver (a co-founder, executive officer, and principal of Ostara).

49.     In return, Glick caused Ostara and Venturioum to assign 25% of the $500,000 Brokerage Fee and 250,000 Orion Units to himself.

50.     The Securities and Brokerage Fee Transfer Agreement effected a wrongful

redemption and wrongful liquidation of Glick's securities in Ostara and Venturioum, and effected a wrongful distribution of corporate assets in Ostara and Venturioum.

51.     The Securities and Brokerage Fee Transfer Agreement secured Glick's interest in the Orion-Potomac Deal without offset for any corporate expenses to the detriment of Plaintiffs' interests in the proceeds of the Orion transaction.

52.     The Securities and Brokerage Fee Transfer Agreement was intended to protect Glick from the potential mismanagement and fraudulent acts of the remaining executive officers of Ostara and Venturioum involving the distribution of corporate assets to Glick.

53.     The Securities and Brokerage Fee Transfer Agreement exposed Plaintiffs to the potential mismanagement and fraudulent acts of the remaining executive officers of Ostara and Venturioum and prevented Plaintiffs from receiving the benefits of the Orion transaction.

54.     The effect of Glick's taking of corporate assets from Venturioum protected Glick from all corporate risk and exposed Plaintiffs to the full measure of corporate risk.

55.     The effect of Glick's taking of corporate assets from Venturioum protected Glick from the potential of mismanagement and fraud with respect to the distribution of his portion of the assets.

**G.**     ***Closing of Orion-Potomac Deal and Payment of Brokerage Fee***

56.     In October 2014, Venturioum received the Brokerage Fee consisting of a $500,000 cash payment and the issuance of 1,000,000 units of Orion equity securities (Class A-1 membership units – each an "*Orion Unit*") to Venturioum and its members.

57.     $125,000 of the Brokerage Fee was diverted from Venturioum and paid directly to Glick pursuant to the Securities and Brokerage Fee Transfer Agreement.

58.     $125,000 of the Brokerage Fee was diverted from Venturioum and paid directly to

Tripathi.

59.     The proportion of the cash Brokerage Fee distributed to Plaintiffs was significantly less than their percentage interest in the Brokerage Fee.

60.     The portion of the Brokerage Fee distributed to Plaintiffs was also significantly reduced by deducting expenses (such as Tripathi and Glick's salaries and travel expenses and other company expenses).

**H.**     ***Plaintiffs' Ownership Interest in Orion Units – Fraudulent Conversion***

61.     On October 16, 2014, Venturioum notified the Plaintiffs via letter that they were the "indicated owners" of 14,500 Orion Units (their allocated portion of the Brokerage Fee).

62.     Venturioum represented that the Orion Units would not be issued directly as they were being held as collateral by Regions Bank as security for a $31.25m loan to Potomac for the purpose of acquiring the shares.

63.     Plaintiffs were subsequently issued an additional 3,000 Orion Units, raising the total to of 17,500 Orion Units held at the time of the Orion transaction.

64.     The 17,500 Orion Units allocated to Plaintiffs and held by Venturioum represented 1.75% of the total Orion Units held by Venturioum (17,500/1,000,000 = 0.0175).

65.     Defendants' conversion of Plaintiffs' 3.59% ownership interest into a 1.75% interest in the Orion Units represented a 50% reduction in Plaintiffs' equity interest in the Venturioum/Ostara Entities.

66.     The Plaintiffs should have been the "indicated owners" of 35,900 Orion Units (or 3.59% of 1,000,000 Orion Units held by Venturioum).

67.     While the Schauffs suffered a 50% dilutive event, Glick and Tripathi's interests in the Orion Units remained 100% undiluted with each holding a 25% interest in the total held by

Venturioum – or each beneficially holding 250,000 Orion Units.

68.     No member of Venturioum held any special rights in the assets of Venturioum, including anti-dilution rights.

I.      ***Orion Unit Sale – Tripathi's Transfer of Corporate Assets – Void***

69.     After holding the Orion investment for nearly three years, Potomac began negotiations with a potential acquirer in late 2017 or early 2018.

70.     In early 2018, Tripathi learned of the potential funding or acquisition transaction involving Orion.

71.     Based on this insider, non-public information, Tripathi caused Venturioum to execute and deliver an Assignment and Assumption Agreement dated June 11, 2018 by which Venturioum agreed to transfer 250,000 Orion Units to Deeta LLC.

72.     Deeta LLC is a single member limited liability company owned and managed by Tripathi.

73.     Tripathi executed the Assignment and Assumption Agreement in her capacity as the managing member of Deeta LLC.

74.     The Assignment and Assumption Agreement was designed to secure Tripathi's interest in the Orion transaction to the detriment of Plaintiffs' interests in the proceeds of the Orion transaction.

75.     The Assignment and Assumption Agreement was intended and did in fact prevent Plaintiffs from receiving the benefits of the Orion transaction.

76.     The Assignment and Assumption Agreement was made without consideration.

77.     The Assignment and Assumption Agreement is void with respect to the corporate assets transferred to Tripathi.

78.     The Assignment and Assumption Agreement was intended and did in fact protect Tripathi from the potential mismanagement and fraudulent acts of David Silver involving the distribution of corporate assets to Tripathi.

79.     The effect of Tripathi's taking of corporate assets from Venturioum protected Tripathi from all corporate risk and exposed Plaintiffs to the full measure of corporate risk.

80.     The effect of Tripathi's taking of corporate assets from Venturioum protected Tripathi from the potential of mismanagement and fraud with respect to the distribution of his portion of the assets.

**J.**     ***Orion Sale – Distribution of Proceeds***

81.     On October 22, 2018, Potomac announced the sale of Orion to One Equity Partners.

82.     The Orion Units were purchased from Venturioum for $4.23 per unit.

83.     The total paid to acquire the 1,000,000 Orion Units originally received as the Brokerage Fee was approximately $4,230,000.

84.     Tripathi and Glick, each as record holders of 250,000 Orion Units, were issued acquisition proceeds directly from Orion.

85.     The remaining 500,000 Orion Shares were held by Venturioum and were allocated 250,000 to Venturioum and 250,000 to the Investor Group.

86.     On October 22, 2019, Venturioum provided instructions to Santa Fe Title for the distribution of proceeds to Venturioum and the Investor Group.

87.     Tripathi and Glick both received a direct payment from Orion at closing of approximately $960,000 and subsequent payments of approximately $97,500 for the acquisition of the 250,000 Orion Units they had taken and assigned to themselves.

88.     Venturioum received a direct payment from Orion at closing of approximately

$1,465,000 and subsequent payments of approximately $150,000 for the acquisition of approximately 390,000 Orion Units.

89.     On October 19, 2018, Santa Fe Title received a wire transfer for the acquisition of 390,000 Orion Units in an amount equal to approximately $1,465,000.

90.     Of the $1,465,000, the Distribution Instructions instructed Santa Fe Title to distribute $1,212,550 nearly 85% of the proceeds to non-Investor Group entities.

91.     The Distribution Instructions instructed Santa Fe Title to distribute only $252,450 to the Investor Group, or only **15%** of the total proceeds.

92.     The Venturioum Investor Group should have received **50%** of the Orion Units sale proceeds.

93.     The allocation set forth in the Distribution Instructions reduced Plaintiffs allocation of the Orion Unit sale proceeds by 70% of the anticipated distribution.

94.     The Plaintiffs, accordingly, received only 30% of the total amount that should have been allocated to them.

95.     At a minimum, because this investor group held the same relative ownership in the Orion Units, these investors were due the same amount distributed to each of Glick and Tripathi, or approximately $1,057,500.

96.     Glick and Tripathi each received 100% of the value of their relative ownership of Orion.

97.     Plaintiffs received a distribution equal to **30%** of the value of their relative ownership of the Orion Units.

**K.     _Plaintiffs Deficiency Calculations; Representations by Venturioum to Determine Amount Due – Stock Issuances_**

98.     Plaintiffs received issuances of 323,335 shares of Ostara NM.   Based on the

representations of the Glick and Tripathi, Plaintiffs understood that 9,040,000 shares were issued and outstanding.  As a result, Tripathi and Glick represented that Plaintiffs owned 3.58% of Ostara.

99.     Following the conversion into Venturioum, Plaintiffs owned the same percentage in Venturioum, 3.58%.

100.    If Venturioum would have distributed the proceeds based on the stock ownership percentage, the Schauff distribution would have been **$151,434**.

3.58% x $4,230,000 = $151,434

101.    Venturioum paid Plaintiffs a total of **$20,475**.

102.    The total calculated deficiency in the amount paid to Plaintiffs based on stock ownership was approximately **$130,959**.

**L.**     ***Plaintiffs Good Faith Attempts to Recover Funds***

103.    On December 4, 2018, Plaintiffs sent a demand letter to the Santa Fe Title Company to disclose the mechanism by which it was instructed to distribute funds to Plaintiffs.

104.    On February 22, 2019, Plaintiffs made a demand upon Venturioum to pay Plaintiffs the full amount received on their behalf from the Orion Transaction. Neither the Plaintiffs nor their counsel received a response.

105.    On June 12, 2019, Plaintiffs made a second demand upon Venturioum to pay Plaintiffs the full amount received on their behalf from the Orion Transaction. As of the filing of this action, neither the Plaintiffs nor their counsel received a response.

106.    In January 2020, Plaintiffs made demands upon Mr. Glick and Ms. Tripathi for compensation for the damages related to the Orion Transaction and the corporate actions set forth herein.  As of the filing of this action, neither the Plaintiffs nor their counsel have received a response other than an acknowledgement that Venturioum would make Plaintiffs whole.

## COUNT I – ANTI FRAUD VIOLATIONS
### [Deceptive or Misleading Securities Sales Practices]

107.    Plaintiffs incorporates their prior allegations herein as though separately stated herein.

108.    It is unlawful under Section 10(b) of the Securities Exchange Act of 1934 [15 USC § 78j(b)] (the "Exchange Act") for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange… [to] use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement… any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

109.    The SEC's Manipulative and Deceptive Devices and Contrivances Rule, 17 C.F.R. § 240.10b-5 (2004) (the "SEC 10b-5 Rule") provides that it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    a.   to employ any device, scheme, or artifice to defraud,

    b.   to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    c.   to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

110.    Defendants' acts and failures to act as alleged herein constitute a "manipulative or deceptive device or contrivance" that misled and defrauded plaintiff within the meaning of Section 10(b) of the Exchange Act and the SEC 10b-5 Rule for the following reasons:

a.   The Plaintiffs were not provided access to the same kind of information concerning the issuer which would appear in an SEC registration statement that would permit them to comprehend and evaluate such information as required by the claimed exemption from registration.

b.   Plaintiffs were not provided substantive disclosure of Ostara or Venturium's business, its past performance, information about the its officers and managers, audited financial statements, capitalization, information on executive compensation, information on special rights held by the executives, risks of the business, tax and legal issues, and the terms of the securities issued (including special preferential rights exercised by Glick and Tripathi including liquidation and redemption rights or rights to receive corporate assets).

c.   Tripathi and Glick, as managers and executive officers of Ostara and Venturium failed to take any reasonable steps to ensure that the information given to the Plaintiffs was complete and accurate or otherwise satisfied the requirements of the registration exemptions under New Mexico or federal securities laws.

d.   The failure by Tripathi and Glick, as managers and executive officers of Ostara and Venturioum, to take reasonable steps to ensure that the information given to the Plaintiffs was complete and accurate, resulted in the omission of material information about the securities offering, in particular, the special rights held by Tripathi and Glick.

e.   All information distributed (or omitted) delivered to the Plaintiffs in the course of the private placement of the Venturium and Ostara securities, either orally or by the Subscription Agreement, is subject to the anti-fraud provisions of the federal securities laws.

f.   Neither Glick not Tripathi took action to ensure that the Offering Materials provided to Plaintiffs were accurate, complete and not misleading.

g.   The failure of Tripathi and Glick to provide current and accurate information about Ostara and Venturium in the private placement transactions prevented the Plaintiffs from (1) assessing suitability of the investment, (2) evaluating the risks of the offering, (3) understanding the special rights purportedly held by Glick and Tripathi and (4) otherwise making a sound investment decision in the Venturium and Ostara securities.

h.   The Subscription Agreements set forth only one class of securities, membership interests in Venturioum.

i.   The Subscription Agreement failed to disclose the existence of preferred classes of shares or special rights held by Glick, Tripathi or any other member.

j.   The Subscription Agreement did not disclose the existence of special liquidation rights held by Glick or Tripathi.

k.   The Subscription Agreement did not disclose the existence of any special redemption rights held by Glick or Tripathi.

l.   The Subscription Agreement did not disclose the existence of any special anti-dilution rights held by Glick or Tripathi.

m.   The Subscription Agreement did not disclose the existence of a special dilution protection afforded to Glick and Tripathi and any commensurate materially adverse dilutive impact on the securities offered to Plaintiffs.

n.   Neither the bylaws, state law nor rights afforded under the Ostara/Venturioum Securities they held provided special liquidation rights to Tripathi or Glick afforded to them under either the Assignment and Assumption Agreement or the Securities and Brokerage Fee Transfer Agreement.

o.   None of the liquidation rights exercised by Tripathi and Glick were made available to Plaintiffs.

p.   The liquidation was neither authorized by the entity's governing corporate documents, special or preferred equity rights nor permitted under applicable state corporate law.

q.   Neither the bylaws, state law nor rights afforded under the Ostara/Venturioum Securities they held empowered Tripathi or Glick to transfer valuable corporate assets to themselves under either the Assignment and Assumption Agreement or the Securities and Brokerage Fee Transfer Agreement.

r.   None of the rights exercised by Tripathi and Glick to transfer corporate assets to themselves were made available to Plaintiffs.

s.   The transfer of corporate assets was neither authorized by the entity's governing corporate documents, special or preferred equity rights nor permitted under applicable state corporate law.

111.   By acting and failing to act as alleged herein, Defendants made untrue statements of fact and failed to state necessary material facts where such an omission would be a manipulative or deceptive device that misled and defrauded Plaintiffs within the meaning of Section 10(b) of the Exchange Act and the SEC 10b-5 Rule.

112.   By acting and failing to act as alleged herein, Defendants engaged in acts, practices

or a course of business, which operated as a manipulative or deceptive device with respect to the Plaintiffs that misled and defrauded them within the meaning of Section 10(b) of the Exchange Act SEC 10b-5 Rule.

113.    Defendants knew or should have known about or acted with severe recklessness regarding the false claims or omissions of material facts.

114.    Plaintiffs justifiably relied on the representations made to them in connection with making investments in Ostara and Venturium.

115.    Defendants are liable to Plaintiffs under the Exchange Act for actual damages or rescission of the Ostara/Venturioum Securities purchases, plus interest on the purchase price paid at the highest rate permitted by law from the date of such purchase until the date of award.

116.    Defendants are liable to Plaintiffs for disgorgement of all fees, commissions, and any other items of remuneration or other value Defendants received on account of the investment of Plaintiffs' assets in the Ostara/Venturioum Securities and the value derived from the sale of the Orion Units.

117.    Defendants are liable to plaintiffs for all the costs, attorney's fees, and expert fees incurred by him which, but for such defendants' wrongful conduct as alleged herein, he would not have had to pay.

## COUNT II – NEGLIGENT MISREPRESENTATION

118.    Plaintiffs incorporate their prior allegations herein as though separately stated herein.

119.    Defendants owed plaintiffs a duty to exercise reasonable care and competence to:

a.    protect the rights and corporate assets of Ostara/Venturioum;

b.    protect the rights and corporate assets of Ostara/Venturioum against the wrongful taking or conversion by the executive officers;

  c.  investigate and obtain accurate and correct information about the subject matter of their solicited investment;

  d.  investigate and obtain accurate and correct information material to the ad visibility of solicited investment; and

  e.  communicate accurate and correct information to them regarding their findings and conclusions about the solicited investment.

120. Defendants breached the above listed duties of ordinary care in the course of their

solicitations, offers, and sales of securities to Plaintiffs when they failed to inform Plaintiffs that:

  t. The offered interest in the Venturium/Ostara Entities had been arbitrarily determined and was not based on the company's value, assets, earnings, or any other accepted standard of value;

  u. That Glick and Tripathi would receive direct transfers of corporate assets, specifically, in the form of cash transfers from amounts earned by the company in connection with the brokerage of the Orion transaction;

  v. That Glick and Tripathi would be permitted to transfer corporate assets out of the company for their personal benefit;

  w. That Glick would be afforded redemption rights relative to his securities in the Ostara/Venturium Entities;

  x. That Plaintiffs anticipated investment returns would be offset by expenses and other risks not borne by the executive officers of the company (such as Glick and Tripathi) and, consequently, Plaintiffs should be prepared to bear a substantial portion (if not all) of the economic risk of the investment for an indefinite period of time;

  y. That Plaintiffs' interests in the Orion Units were subject to material dilution resulting from the securities transactions involving Tripathi and Glick and other corporate officers;

  z. That Plaintiffs' interests in the Orion Units were subject to material dilution resulting from the securities transactions involving the discretionary issuance of securities to third parties and the discretionary use of funds for operating expenses for Tripathi, Glick and other corporate officers;

  aa. That the valuation of the securities was subject to discretion of the executive officers without notice or reference to any commercially accepted valuation standards;

bb. In soliciting Plaintiffs' investment in the Ostara/Venturioum Entities, and in offering to sell securities to Plaintiffs, Defendants Tripathi and Glick materially misrepresented (by omission or otherwise) the securities offered to Plaintiffs.

cc. Tripathi and Glick knew or should have known that the misrepresentations were material to the Plaintiffs in making their investment decision in the Ostara/Venturioum Securities;

dd. At the time of such solicitation, offer, and sale, the membership units of Venturioum and the stock of Ostara were securities under the Securities Act of 1933;

ee. At the time of such solicitation, offer, and sale, the Venturioum and Ostara Securities were not registered under the Securities Act of 1933 or the Securities Exchange Act of 1934 or any applicable state securities laws;

ff. In the course of the foregoing solicitation, offer and sale, Defendants Tripathi and Glick, in their capacities as executive officers and directors or managers of Venturioum and Ostara, made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances pursuant to which they were made, not misleading.

121.    Defendants' breach proximately caused plaintiffs to suffer actual damages in an amount to be proven at trial.

122.    Defendants knew or should have known that plaintiffs entrusted their personal business with them with the understanding that their invested assets and the assets of Venturioum would be utilized in a manner represented to him by the Defendants.

123.    Defendants' acts and failures to act as alleged herein proximately caused Plaintiffs to lose the opportunity to invest their assets in suitable securities which would have not exposed them to losses and would have earned a return in an amount to be determined at trial and which they seeks as special damages.

124.    Defendants acted willfully, recklessly or in wanton disregard of Plaintiffs' rights in acting and failing to act as alleged herein.

125.    Defendants are liable to Plaintiffs for punitive damages in an amount to be determined at trial.

126.    Defendants are liable to Plaintiffs for disgorgement of all fees, commissions, and any other items of remuneration or other value they or any of them received on account of the investment of Plaintiffs' assets and their wrongful taking of Ostara/Venturioum assets.

127.    Defendants are liable to Plaintiffs for all the costs and expert fees incurred by him which, but for defendants' wrongful conduct, he would not have had to pay.

## COUNT III –BREACH OF FIDUCIARY DUTY

128.    Plaintiffs incorporate their prior allegations herein as though separately stated herein.

129.    Tripathi and Glick owed plaintiffs a fiduciary duty to:

   a.   protect the rights and corporate assets of Ostara/Venturium;

   b.   protect the rights and corporate assets of Ostara/Venturioum against the wrongful taking or conversion by its executive officers;

   c.   investigate and obtain accurate and correct information about the subject matter of their solicited investment;

   d.   investigate and obtain accurate and correct information material to the advisability of solicited investment; and

   e.   communicate accurate and correct information to them regarding their findings and conclusions about the solicited investment.

130.    Tripathi and Glick breached their fiduciary duty to Ostara/Venturioum members including Plaintiffs.

131.    Tripathi and Glick's breach proximately caused plaintiffs to suffer actual damages in an amount to be proven at trial.

132.    Tripathi and Glick knew or should have known that Plaintiffs entrusted their personal business with her with the understanding that their invested assets and the assets of

Ostara/Venturioum would be utilized in a manner represented to them by Ostara/Venturioum and the Defendants.

133.    Tripathi and Glick's acts and failures to act as alleged herein proximately caused Plaintiffs to lose the opportunity to invest their assets in suitable securities which would have not exposed them to losses and would have earned a return in an amount to be determined at trial and which they seeks as special damages.

134.    Tripathi and Glick acted willfully, recklessly or in wanton disregard of Plaintiffs' rights in acting and failing to act as alleged herein.

135.    Tripathi and Glick are liable to Plaintiffs for punitive damages in an amount to be determined at trial.

136.    Tripathi and Glick are liable to Plaintiffs for disgorgement of all fees, commissions, and any other items of remuneration or other value they or any of them received on account of the investment of Plaintiffs' assets and her wrongful taking of Ostara/Venturioum assets.

137.    Tripathi and Glick are liable to Plaintiffs for all the costs and expert fees incurred by them which, but for Tripathi and Glick's breach of their duty and their wrongful conduct, they would not have had to pay.

## COUNT IV – BREACH OF CONTRACT and IMPLIED COVENANT OF GOOD FAITH and FAIR DEALING

138.    Plaintiff incorporates his prior allegations herein as though separately stated herein.

139.    The company represented and warranted among other things that it would send "reports to Subscriber on its financial condition and significant events that could affect Subscriber's investment in the Company [sic] no less frequently than once a quarter" and "audited financial statements to Subscriber within sixty (60) days following the end of each fiscal year." See Sections 7(c) and 7(d) of the Subscription Agreement.

140.    Venturioum failed to provide any quarterly updates and, specifically, failed to inform Plaintiffs of the special rights held and exercised by Glick and Tripathi.

141.    Venturioum failed to provide Plaintiffs with audited annual financial statements.

142.    Venturioum failed to provide Plaintiffs with unaudited annual financial statements.

143.    Venturioum failed to provide Plaintiffs with any form of financial statements or other material information regarding the company, including capitalization tables, at any time.

144.    Tripathi and Glick expressly and impliedly agreed to give Plaintiffs their expert, individual, attention and to bring care and competence to bear in the course of soliciting their investment in the Venturioum Securities and then performing their obligations as principals and executive officers of Venturioum and the other Venturioum/Ostara Entities.

145.    In her capacity as Chief Operating Officer, Tripathi provided an implied covenant to deal fairly and in good faith with plaintiff.

146.    In his capacity as Chief Executive Officer, Glick provided an implied covenant to deal fairly and in good faith with plaintiff.

147.    Tripathi breached her agreement and the implied covenant of good faith and fair dealing.

148.    Glick breached his agreement and the implied covenant of good faith and fair dealing.

149.    Tripathi's and Glick's breach proximately caused Plaintiffs to suffer actual damages in an amount to be proven at trial.

150.    Defendants knew or should have known that Plaintiffs contracted with them with the understanding, which the Defendants shared, that his funds would be invested in a manner

consistent with the solicitation and that the Defendants would not divert corporate assets to themselves and would otherwise perform their duties in a commercially reasonable manner.

151.    Defendants' acts and failures to act as alleged herein proximately caused Plaintiffs to lose the opportunity to invest their assets in suitable securities which would posed substantially lesser risks and would have earned a return in an amount to be determined at trial and which they seek as special damages.

152.    Defendants acted willfully, recklessly or in wanton disregard of Plaintiffs' rights in acting and failing to act as alleged herein.

153.    Defendants are liable to Plaintiffs for punitive damages in an amount to be determined at trial.

154.    Defendants are liable to Plaintiffs for disgorgement of all fees, commissions, and any other items of remuneration or other value they or any of them received on account of the use or investment of Plaintiffs' assets in the Orion Venture Capital Brokerage Transaction.

155.    Defendants are liable to Plaintiffs for all the costs and expert fees incurred by them which, but for Defendants' wrongful conduct, they would not have had to pay.

## <u>COUNT V - RESPONDEAT SUPERIOR</u>

156.    Plaintiffs incorporate their prior allegations herein as though separately stated herein.

157.    Tripathi is vicariously liable for the acts and omissions of Ostara and Venturium as alleged in this action.

158.    Glick is vicariously liable for the acts and omissions of Ostara and Venturioum as alleged in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment in their favor and against

defendants:

A.      Awarding them *actual* damages in the principal amount to be proven at trial;

B.      Awarding them *special* damages in the principal amount to be proven at trial;

C.      Awarding them *punitive*, or, alternatively, *statutory treble*, damages in the principal

amount to be proven at trial;

D.      Ordering defendants to *disgorge* all fees, commissions, items of remuneration, and

expenses paid by or out of Plaintiffs' assets;

E.      Ordering defendants to reimburse plaintiffs for all their *costs*;

F.      Ordering defendants to reimburse plaintiffs for their *expert fees*;

G.      Awarding *attorney's fees* to the fullest extent permitted by law;

H.      Awarding *pre-judgment interest* at a rate equal to the maximum rate of interest allowed by

law from the date of each purchase until entry of judgment;

I.      Awarding *post-judgment interest* at a rate equal to the maximum rate of interest allowed

by law from the date of judgment until the judgment is paid; and

J.      Grant Plaintiffs such other and further relief as is just and proper.

Respectfully submitted,

**ABELL LAW LTD. CO.**

By_____/s/ David J. Abell_____
            David J. Abell

11024 Montgomery Blvd.
Suite 210
Albuquerque, NM 87111
(E) david@abell-law.com
(T) 505-688-0986

**SAUCEDOCHAVEZ, P.C.**

By_____/s/ Christopher T. Saucedo_____
            Christopher T. Saucedo

800 Lomas Blvd NW, Suite 200
Albuquerque, NM 87102
(E) csaucedo@saucedochavez.com
(T) 505-338-3945