# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOSEPH SCHAUFF and PEGGY SCHAUFF,

    Plaintiffs,

v.                                          No. 1:20-CV-590 WJ/JHR

SUSHMA TRIPATHI and LLOYD GLICK,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT GLICK'S MOTION TO DISMISS WITH PREJUDICE

THIS MATTER comes before the Court upon Defendant Glick's Motion to Dismiss with Prejudice, filed October 8, 2020 **(Doc. 22)**. Having reviewed the parties' briefing and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

This case arises out of a securities investment gone wrong. Beginning in 2010 and for several years thereafter, Plaintiffs were allegedly solicited by Defendants Tripathi and Glick to invest money in companies which Defendants owned and managed—namely, Ostara Technology Co., Inc ("Ostara") and Venturioum, LLC ("Venturioum").[1] The gist of the amended complaint (Doc. 3) is that Tripathi and Glick liquidated the assets of both companies, transferring valuable corporate assets to themselves, which was not authorized by the governing corporate documents or applicable state corporate law. Plaintiffs claim that Defendants misled and defrauded them

---

[1] Plaintiffs allege potential mismanagement and fraudulent acts of an individual named David Silver as well. Mr. Silver was a co-founder, executive officer and principal of Ostara and an equal member of Ventorioum. *See* Doc. 3, ¶48; Doc. 24 at 1. Mr. Silver filed a self-styled "Amicus Curiae Brief" purporting to be an "expert witness" in this case." Doc. 20. The Court struck the brief, noting that Silver was neither a party to this case nor an expert and noted that any future filings by him would be stricken as well. Doc. 21.

regarding financial investments and are suing Defendants for Violations of the Securities Exchange Act of 1934, violations of the unfair practices act, breach of fiduciary duty, and wrongful misrepresentation. The complaint was filed on June 19, 2020, and makes claims for, *inter alia*, violations of the unfair practices act, breach of fiduciary duty, and wrongful misrepresentation. (Compl., Doc. 1 at 1). Defendants are not represented by counsel and both appear to have been served. Docs. 13, 14.[2]

As best the Court can decipher, Mr. Glick ("Defendant" for purposes of this motion) seeks dismissal of Plaintiffs' lawsuit on three grounds:

(1) Plaintiffs did not bring this action under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4;

(2) lack of personal jurisdiction; and

(3) the lawsuit was filed outside of the relevant statute of limitations.

## DISCUSSION

Given the nature of relief requested by Defendant, the Court assumes that the motion is filed pursuant to Fed.R.Civ.P.12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must only contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**I.   PSLRA**

---

[2] Defendant Tripathi is challenging service of process, a matter which is pending before the Court. *See* Doc. 28.

In 1995, Congress heightened the pleading standard for federal securities fraud claims with the passage of the PSLRA. *See* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737. The purpose of the PSLRA was to curb frivolous securities lawsuits. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003).  To achieve its purpose, the PSLRA did not add to the list of elements that make up the 10b–5 cause of action; instead, it strengthened what is required adequately to plead two of those elements. *See* 15 U.S.C. § 78u–4(b)(1), (2). *Id.*

The PSLRA requires that:

[i]n any private action arising under this chapter in which the plaintiff alleges that the defendant—

(A) made an untrue statement of material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1); *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12 (1976) ("Under the PSLRA, a plaintiff must plead, in part, the existence of a misleading statement, and scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'").  The Tenth Circuit has aligned with other circuits that have concluded that, notwithstanding the use of the word "all," in paragraph (b)(1) [of § 78u–4], "the PSLRA does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d at 1098–99; *In re Gold Resource Corporation Securities Litigation,* 776 F.3d 1103 (10th Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499 (2007) ("The inquiry . . . is whether

3

all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.").

Mr. Glick's specific objection on this issue is that Plaintiffs have failed to plead the element of scienter and so the question here is whether the amended complaint states with particularity "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2)(A).  The Court need not comb through the entire 32-page amended complaint to find the answer, which is that Plaintiffs have sufficiently pled scienter as required by the PSLRA.  Plaintiffs point to Subsection F of the amended complaint, ¶¶47-56, which adequately highlights Defendant Glick's mental state to deceive, manipulate, or defraud Plaintiffs. In that section, Plaintiffs allege that Defendant Glick, a majority shareholder, director, and officer of Venturioum, abused his power and relied on insider information to defraud Plaintiffs and the other minority shareholders by wrongfully liquidating his assets, which equated to a wrongful distribution of corporate assets:

> 47. In late 2014, and in connection with his negotiation for the Brokerage Fee of the Orion-Potomac Deal, Glick sought to find a way to carve out a portion of the Brokerage Fee for himself despite his fiduciary obligations to the Plaintiffs and the other shareholders.
>
> 48. Based on this insider, non-public information, and only days prior to the payment of the Brokerage Fee, Glick caused Ostara and Venturioum to execute and deliver a Purchase of Interest, Release and a Hold Harmless Agreement dated September 8, 2014, by which Glick transferred his 25% equity interest of Ostara and Venturioum to Tripathi and David Silver (a co-founder, executive officer, and principal of Ostara).
>
> 49. In return, Glick caused Ostara and Venturioum to assign 25% of the $500,000 Brokerage Fee and 250,000 Orion Units to himself.
>
> 50. The Securities and Brokerage Fee Transfer Agreement effected a wrongful redemption and wrongful liquidation of Glick's securities in Ostara and Venturioum, and effected a wrongful distribution of corporate assets in Ostara and Venturioum.

> 51. The Securities and Brokerage Fee Transfer Agreement secured Glick's interest in the Orion-Potomac Deal without offset for any corporate expenses to the detriment of Plaintiffs' interests in the proceeds of the Orion transaction.

Doc. 3, ¶¶47-51.

This Circuit applies a "common-sense, case-by-case approach in determining whether a plaintiff has alleged securities fraud with the particularity required by § 78u–4(b)(1) without adding a per se judicial requirement that the source of facts must always be alleged to support substantive allegations of fraud in an information and belief complaint." 340 F.3d at 1102–03. In this approach, courts evaluate the facts alleged as a whole, evaluating (a) the level of detail, number, and coherence and plausibility of the allegations; (b) whether the allegations are specific enough to be verified or refuted by a defendant without requiring the complaint to disclose how the plaintiff learned of such facts or experts to prove such facts at trial; (c) whether the sources of the facts are disclosed and the reliability of those sources; and (d) and any other factors that might affect how strongly the facts alleged support a reasonable belief that the defendant's statements were false or misleading.  While plaintiffs are not required to disclose the documentary or personal sources from which they learned the facts alleged in an information and belief complaint, they must meet the PSLRA's heightened standard for pleading securities fraud by alleging "particularly detailed, numerous, plausible, or objectively verifiable by the defendant before they will support a reasonable belief that the defendant's statements were false or misleading." 340 F.3d at 1102-03.

Subsections (A) through (K) of the general allegations in the amended complaint provide sufficient specificity with detailed descriptions of:

- Plaintiffs' investment in the Venturioum/Ostara Entities;
- The executed agreements between Plaintiffs and Defendants (the Subscription Agreements");

5

- Issuance of Ostara and Venturioum Securities and specific representations made to Plaintiffs regarding their ownership interests and percentage of equity stake in the companies;

- Glick's transfer of his 25% equity interest in Ostara and Venturioum to Tripathi and David Silver in return for causing Ostara and Venturioum to assign 25% of the $500,000 brokerage fee and 250,00 " Orion Units" to himself, despite his fiduciary obligations to Plaintiffs and shareholders;[3] and that this transfer agreement "effected a wrongful distribution of corporate assets in Ostara and Venturioum." ¶50;

- Fraudulent conversion of Plaintiffs' ownership interest in "Orion Units" resulting in a 50% reduction in Plaintiffs' equity interest in the Venturioum/Ostara Entities; and

- Deficient calculations of Plaintiffs' ownership in Venturioum, where distribution of stock in that company was deficient by $130,959.

When considered as a whole, the facts in these categories are sufficiently detailed and numerous to satisfy PSLRA requirements and to be subject to objective verification by Defendant. They support a reasonable belief that Glick's statements were false or misleading and that Defendant had the intention to defraud Plaintiffs. Taking the statements in the amended complaint to be true, the Court finds that Plaintiffs have plausibly established the level of scienter required under the PSLRA and so rejects Defendant Glick's argument on this issue.

## II. Personal Jurisdiction

Defendant contends that this Court has no personal jurisdiction over him because he did not enter New Mexico during the relevant period for this lawsuit (between 2012 and 2020) and his actions from New Jersey do not violate the New Mexico Long Arm Statute.

### A. Relevant Law

New Mexico law uses a three-part test to determine whether personal jurisdiction lies over non-residents and considers whether: (1) the defendant committed an act or omission

---

[3] There is no further explanation of "Orion Units" which the Court assumes refers to certain common stock in the companies.

specifically set forth in New Mexico's long-arm statute; (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to New Mexico to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 132 N.M. 312, 318 (2002). The statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Id.* at 316; *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492–93 (10th Cir. 2012). The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process. *Gray v. Acadia Healthcare Co., Inc.*, 408 F. Supp. 3d 1250, 1252 (D.N.M. 2019).[4]

Due process requires that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). A nonresident defendant's contacts with a forum state must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The minimum contacts requirement may be met by the court exercising either general or specific jurisdiction. General jurisdiction—which does not apply here—exists when the defendant's contacts with the forum state "are so "continuous and systematic" as to render the individual "essentially at home in the forum State." *Id.* at 904 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))*; Gray v. Acadia Healthcare Co., Inc.*, 408

---

[4] *See also Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742 (Ct.App.1996) ("transaction of business" under long-arm statute has been "repeatedly equated" with the due process standard of minimum contacts); *Resource Associates Grant Writing & Evaluation Services, Inc. v. Southampton Union Free School District*, 193 F.Supp.3d 1200, 1220 (D.N.M. 2016) (Browning, J.) (Because "New Mexico's long-arm statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible. . . the Court need not conduct a statutory analysis apart from the due process analysis.").

F. Supp. 3d 1250, 1253 (D.N.M. 2019). Courts may exercise specific jurisdiction in cases that "arise out of or relate" to those activities. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). For specific jurisdiction, courts look only to the contact out of which the cause of action arises. *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011).

B. Analysis

A plaintiff need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss when the court does not conduct an evidentiary hearing, as in this case. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Plaintiffs have done so here.

First, Defendant's alleged conduct arises out of Glick's involvement with New Mexico entities, as required under New Mexico's long-arm statute. Second, Plaintiff has shown that Mr. Glick has sufficient minimum contacts to New Mexico to satisfy due process concerns. Mr. Glick established New Mexico as the principal place of business for both Venturioum and Ostara. *Id., ¶¶*3, 4, & 5. While the amended complaint alleges that Glick is a resident of New Jersey, he is also co-founder, president, chief executive officer, director and material shareholder of both entities. Doc. 3, ¶¶13-17. *See Racher v. Lusk,* 674 Fed.Appx. 787, 791 (10th Cir. 2016) (holding that an individual who owns controlling interest, and was an organizer of an entity conducting business in a state has the requisite minimum contacts in that state). Thus, exercising personal jurisdiction over Mr. Glick comports with "fair play and substantial justice" because he "should reasonably anticipate being haled into court" in this state where his two companies have their principal place of business. *Burger King,* 471 U.S. at 473-76 (1985).

Plaintiffs have therefore presented sufficient facts to constitute a prima facie showing that this Court has personal jurisdiction over Defendant Glick.

**III.    Statute of Limitations**

Defendant contends that this lawsuit should have been filed within two years from the first Orion "liquidity event" which occurred in October 2014, but does not point to the relevant statute of limitations for that argument.

Plaintiffs argue that, based on New Mexico common law, the relevant statute of limitations for causes of action sounding in fraud or conversion is four years from the date that the cause of action accrues, and that the cause of action does not accrue until the plaintiff discovers the fraud or conversion. *See Wilde v. Westland Development Co., Inc.*, 2010-NMCA-085, ¶18.[5]  Plaintiffs contend that because Plaintiffs' allegations against Defendant Glick stem from claims of fraud or conversion, the statute of limitations under New Mexico law did not accrue until they discovered Defendant Glick's fraudulent behavior which did not occur—according to the complaint—until October 2018. Doc. 3, ¶¶69, 81, 89.  The Court agrees and therefore, Plaintiffs' state law claim fall well within the applicable four-year statute of limitations.

**THEREFORE,**

**IT IS ORDERED** that Defendant Glick's Motion to Dismiss with Prejudice **(Doc. 22)** is hereby DENIED for reasons described in this Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] In diversity cases, substantive issues are controlled by state law and procedural issues are controlled by federal law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Cooper v. Cent. Southwest Services*, 271 F.3d 1247, 1251 (10th Cir. 2001); *Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc.*, 184 F. Supp. 3d 1030, 1060 n.13 (D.N.M. 2016) (quoting *C.F. Braun & Co. v. Oklahoma Gas & Elec. Co.*, 603 F.2d 132, 133 n.1 (10th Cir. 1979)) (internal citation omitted).